THE STATE EX REL. WARDEN, Respondent, vs. KNIGHT, Appellant.

82    151
a87   182

*December 15, 1891 — January 12, 1892.*
*March 25 — April 12, 1892.*

Quo warranto: *Stay of proceedings: County treasurer: Official bond: Neglect to approve:* Mandamus: *Additional bond: Vacancy.*

1. In *quo warranto* proceedings against K., a county treasurer whose term had expired, there was a judgment in favor of W., the treasurer elect; and thereafter W., who had filed a valid though unapproved bond, took possession of the office and became treasurer *de facto*. K. appealed from the judgment, and applied to this court for a stay of proceedings, pending the appeal. It being doubtful whether such a stay would reinstate K. in the office, and probable that it would deprive W. of his character as treasurer *de facto*, and it being of the highest public concern that there should be some person having authority to perform the duties of the office, the stay is denied.

2. A county treasurer elect deposited with the county clerk his official bond and oath two days before the expiration of the twenty days within which he was required so to do by sec. 701, R. S. The county board having neglected to perform its duty to act promptly in the matter of the approval of such bond, it is *held* that at the end of the twenty days the bond, in judgment of law, was approved, and the treasurer elect became treasurer *de jure* and entitled to enter upon the duties of the office.

3. It was not necessary in such a case for the treasurer elect to proceed by *mandamus* to compel the county board to act upon the bond.

4. The provision of sec. 702, R. S., that whenever the county board shall deem the bond of any county officer insufficient they may require an additional bond, must be construed in connection with subd. 8, sec. 962, providing that the neglect or refusal of any officer *in office* to execute and file an additional bond, when lawfully required, in the manner prescribed by law, shall cause a vacancy in the office. It has, therefore, no application to an officer who has not yet obtained possession of his office.

APPEAL from the Circuit Court for *Bayfield* County.

The following statement of the facts was prepared by Mr. Justice LYON in connection with the opinion upon a mo-

tion to fix the amount of an undertaking to be given by the appellant to stay proceedings, pending the appeal, upon the judgment appealed from:

This is a contest for the office of treasurer of Bayfield county. At the general election held in November, 1890, *Alonzo Knight*, the appellant, who was then the incumbent of the office, and *Alfred M. Warden*, the respondent, were opposing candidates for election to such office. *Warden* was duly elected thereto for the ensuing term, to commence on the first Monday in January, 1891. He deposited his oath of office and an official bond with the county clerk of Bayfield county within the time, and such instruments were in the form, prescribed by the statute, and thereupon demanded of *Knight* the office, and the moneys, books, and papers pertaining thereto. *Knight* refused to surrender the same, for the reason that the official bond of *Warden* had not been approved as required by sec. 702, R. S. It appears that the bond had not been thus approved.

In March, 1891, *Warden* commenced this action of *quo warranto* against *Knight* to recover the office. The action was tried in the circuit court in October, 1891, and the trial resulted in a verdict (directed by the court) that *Warden* is entitled to the office. November 12, 1891, judgment was entered establishing such right and ousting *Knight* from the office. On the 25th of the same month *Knight* served on the proper persons notice of an appeal to this court from such judgment, but served no undertaking on the appeal until December 12, 1891, when he served the undertaking for costs prescribed in sec. 3052, R. S.

On December 1, 1891, the circuit judge before whom the cause was tried denied an application by *Knight* to fix the amount of the undertaking required to stay proceedings on the judgment pending the appeal. On the next day *Warden* took possession of the office without actual force, and presumably is still in possession and in the exercise of the

duties thereof. On the same day (December 2) *Warden* commenced a summary proceeding against *Knight,* under the statute (R. S. secs. 978, 3472), to compel delivery to him of the moneys, books, and papers pertaining to the office.

On December 7, 1891, one of the justices of this court, on the application of *Knight,* granted an order upon *Warden* to show cause why this court should not fix the amount of the undertaking to be given to stay proceedings under the judgment, pending the appeal, and in the meantime staying such proceedings until the further order of this court.

The foregoing is an outline of the material facts shown by the motion papers. Many other proceedings not here stated have been taken, but inasmuch as they have no influence in the determination of the motion it is unnecessary to state them.

*E. F. Gleason,* for the appellant.

*W. M. Tomkins,* for the respondent.

The following opinion was filed January 12, 1892:

LYON, J. We are of the opinion that a stay of proceedings on the judgment in the *quo warranto* action pending the appeal is not a matter of strict right, even if it be conceded that the statute authorizes it. Without deciding the point, we assume that the statute authorizes the court to prescribe the proper undertaking for a stay of proceedings on the judgment.

There are certain considerations which should guide and control the court in determining whether, in this case, the court should exercise such authority and stay the proceedings on the judgment beyond the collection of costs — the circuit court having granted a stay to that extent. In the first place, it should not be determined or intimated on this motion which of these parties is entitled to the office in controversy. That can be properly determined only upon the

The State ex rel. Warden vs. Knight.

appeal from the judgment. In the next place, the public interests are to be regarded, and no mere interlocutory order should be made which may embarrass the transaction of business with the county treasurer, or cast any doubt upon the legality of his official acts.

As we understand the motion papers, *Warden* is now in possession of the office, and engaged in transacting the business and performing the duties appertaining thereto. It is not represented that *Knight* has assumed to act as county treasurer since *Warden* took possession of the office. There can be no doubt, we think, that *Warden* is the county treasurer *de facto* for the time being, and that his acts as treasurer are valid, even though it should be finally determined that he is not entitled to the office. Doubtless, also, the unapproved bond which he has filed is a valid common-law bond, and will bind the sureties therein to make good any loss resulting from any breach of official duty by their principal. It is now the time when town treasurers usually make their returns to the county treasurer. They must do so within the next two weeks. Sec. 1081, S. & B. Ann. Stats. Within thirty days thereafter the treasurer must issue his warrant to the sheriff for the collection of delinquent personal taxes, and early in April he must advertise delinquent real estate for sale for nonpayment of the taxes thereon. It is of the highest public concern that the above-mentioned official acts should be performed by a person having authority to perform them. No person has such authority unless he be county treasurer, either *de facto* or *de jure*.

Were a stay of proceedings to be now granted it is doubtful, to say the least, whether it would have the effect to reinstate *Knight* in the office pending the appeal. Whether it would do so or not, it is quite probable that it would deprive *Warden* of his character of county treasurer *de facto*. Thus it might happen that the important duties above

enumerated might be performed by him, and the same be absolutely void and of no effect. This would be a public disaster, which should be avoided if possible. We see no way to avoid it except by allowing *Warden* to retain the office until the appeal shall be determined. If the judgment is adverse to him, *Knight* may be amply indemnified for the temporary loss of the office.

*By the Court.*— The motion is denied, and the rule to show cause discharged, without costs to either party.

The following statement was prepared by Mr. Justice PINNEY in connection with the opinion upon the merits:

This is an action of *quo warranto*, to oust the respondent from the office of county treasurer of Bayfield county, and for a judgment declaring and adjudging the relator entitled thereto. At the general election in 1890, the relator was elected county treasurer over the respondent, who then held the office under a previous election for a full term, then about to expire. The complaint alleges in substance, among other things, that on the 24th of January, 1891, and within twenty days after the commencement of the term for which he was elected, the relator qualified by executing and depositing in the office of the county clerk his official bond in double the amount of the taxes levied by the county board at their last annual meeting, to wit, in the sum of $81,000, with good and sufficient sureties, executed, witnessed, and acknowledged as required by law, and that he took and subscribed the proper official oath, and filed it, duly certified, with the said clerk; that at the time and prior to the filing of the bond no committee of at least two members, with the chairman of the county board, had been appointed to approve official bonds, and the board was not in session; that on the 23d of January he presented said bond to the chairman for his approval; that he took the bond, examined and returned it to the relator, and, without

assigning any reason therefor, wilfully, unjustly, and arbi-trarily refused to give it his approval, and on that day left the county, and did not return until the 7th of February following, when he remained only two days, but without calling any meeting of the board, and again left the county, remaining absent until February 21st, and after said date he had not called any such meeting; that on the 26th of January relator demanded of respondent, then in posses-sion of the office, that he deliver it, and all the moneys, books, etc., thereto belonging, to him, but he refused and still refuses to do so, on the ground that relator's official bond had not been approved; that the delay in calling the meeting of the county board was for the purpose of pre-venting the relator from entering upon the duties of his said office.

The respondent demurred to the complaint, and the court overruled the demurrer; whereupon he answered, admitting relator's eligibility and election, the execution of his official bond with sureties, in substance as alleged, and the deposit of the same by the relator on the 24th of Jan-uary with the county clerk, together with his official oath; and alleging that the bond had never been approved by the county board, and that the board required the relator to file an additional bond, which he failed to do, for which reason the board, on the 21st of April, declared said office vacant. The answer did not deny that the bond filed by relator was sufficient.

At the trial it appeared that the county board consisted of four members; that when the bond was presented to the chairman, January 23d, he was on the cars on his way to Madison, and he said he would not approve it without the board was in session, and that no committee had been ap-pointed to examine the bond. The record of the county board showed such to be the fact. The bond was deposited with the county clerk the next morning. Respondent re-

fused to turn over the office to the relator, January 26th, for the reason that his bond had not been approved. The absence of the chairman from the county from January 23d to February 7th, and from February 9th to 21st, was proved as alleged. A meeting of the board was called for and held February 7th, and respondent's counsel offered to show that a committee of three, then appointed, proceeded to inquire into the sufficiency of the sureties on the bond, to determine whether it was such that they could approve it, and that they satisfied themselves that it was insufficient, and reported with all practicable speed to the board; but the offer was rejected. From the record of proceedings of the county board put in evidence, it appeared that at the meeting on the 7th of February, on motion, the county clerk was sworn and examined before the board, and he testified that he notified the relator of his election " within two or three days after the board of county canvassers met. They met a day or two after the November election. I think it was on the 10th of November. I notified him by mail." Thereupon it was moved and carried " that the bond of *A. M. Warden* was filed according to law." On the 17th day of March, after the action had been commenced, a special meeting of the board was held, and the matter was postponed until March 28th, and on the last-named day the special committee recommended that the relator's bond be approved at $58,000, and that he be directed to file a supplemental bond of $23,000. Another meeting was held April 17th, when a motion for extension of time for relator to procure his additional bond, to May 1st, was denied, and the county clerk was called upon, and he testified before the board that the relator had not filed such additional bond; and thereupon an adjournment was had until May 21st, on which day an additional bond in the sum of $23,000 was presented and rejected, and a resolution was adopted declaring the office of county treasurer vacant for non-

compliance with the demand for an additional bond of $23,000.

At the close of the testimony, the respondent requested the court to direct a verdict in his favor, which the court refused to do, but directed a verdict in favor of the relator upon which judgment of ouster and establishing the right of the relator was entered, and from which the respondent appealed.

For the appellant there were briefs by *Lamoreux, Gleason, Shea & Wright,* and oral argument by *W. F. Shea.* They contended, *inter alia,* that *Knight* was bound by law to hold the office, discharge its duties, and shoulder its responsibilities, and was entitled to its emoluments, until *Warden* was qualified. He could not evade this responsibility even by resigning. R. S. sec. 962, subd. 5. The law in such case postpones the officer's will to his duty. *People ex rel. I. M. R. Co. v. Supervisors,* 100 Ill. 332, 335–7; *Badger v. U. S. ex rel. Bolles,* 93 U. S. 599; *Jones v. Jefferson,* 66 Tex. 576; *State ex rel. Epler v. Lewis,* 10 Ohio St. 129; Mechem, Pub. Off. secs. 396–7, 399, 416. The courts cannot dispense with the approval of the bond, or interpolate exceptions in the statute requiring such approval. Even if the statute imposed on the officer an impossible duty, the courts cannot hold such duty performed. *Marsh v. Clark Co.* 42 Wis. 518. Nor can the courts control, correct, or interfere with the honest exercise of discretionary power vested in local officers or boards. *Moll v. Benckler,* 30 Wis. 585; *State ex rel. Manitowoc v. County Clerk,* 59 id. 15, 24; *Wharton v. School Directors,* 42 Pa. St. 358, 364; *Parker v. Portland,* 54 Mich. 308. The relator's remedy is by *mandamus* to compel the board or its committee to act. The object of the writ in such case is not to govern official discretion, but to compel the exercise or correct the abuse thereof. This remedy commends itself to reason and to justice. It places the responsibility where it prop-

erly belongs, while the remedy by *quo warranto* shifts the responsibility upon an innocent person, as is illustrated by this case. Not the least of the wrongs which this proceeding would inflict on the defendant is the loss of all the salary paid him since the filing of the relator's bond. R. S. sec. 3473; *People ex rel. Swinburne v. Nolan*, 101 N. Y. 539; *People ex rel. Benoit v. Miller*, 24 Mich. 458; *Douglas v. State ex rel. Wright*, 31 Ind. 439; Mechem, Pub. Off. sec. 333. Moreover, the action of the members of the board should not be condemned without giving them a hearing. *Mandamus* then, not *quo warranto*, is the proper remedy. And such are the authorities. *State ex rel. James v. Lynn*, 31 Neb. 770; *State ex rel. Epler v. Lewis*, 10 Ohio St. 129; *Amperse v. Kalamazoo*, 59 Mich. 78; *Parker v. Portland*, 54 id. 308; *State ex rel. Mixer v. Supervisors*, 26 id. 422; *Glencoe v. People ex rel. Owens*, 78 Ill. 382; *In re Prickett*, 20 N. J. Law, 134; 14 Am. & Eng. Ency. of Law, 168, note 2; Id. 133, note 3. It is claimed that the relator had twenty days after the commencement of his term within which to deposit the bond. This was not the view taken of the statute when it first came before this court. *Att'y Gen. ex rel. Spooner v. Elderkin*, 5 Wis. 300. A different construction, however, having been placed upon the statute afterwards (*State ex rel. Ames v. Southwick*, 13 Wis. 365), the revisers amended it with the apparent design of restoring the original interpretation.

For the respondent there was a brief by *Tomkins & Merrill* and *J. J. Miles*, and oral argument by *W. M. Tomkins*. They cited *State ex rel. Ackerman v. Dahl*, 65 Wis. 510; *State ex rel. Willis v. Prince*, 45 id. 610; S. & B. Ann. Stats. sec. 702, note.

The following opinion was filed April 12, 1892:

PINNEY, J. The tenure of office of the respondent, as the incumbent of the office of county treasurer at the time when the relator was elected, was until the first Monday of Jan-

uary next thereafter (January 6, 1891), and until his suc-
cessor should be qualified.   R. S. sec. 698.

1. The relator has a right to qualify at any time within
twenty days after the commencement of the term for which
he was elected.  Sec. 701, R. S.; *State ex rel. Ames v. South-
wick*, 13 Wis. 365.   It is contended that the relator had
official notice of his election as early as the 10th of Novem-
ber, and that he was bound to qualify within twenty days
thereafter, but this contention is predicated solely upon the
testimony given by the county clerk, not in court, but be-
fore the county board, and written down on its record,
which was offered in evidence at the trial; but the utter
inadequacy of the proof is obvious.   All there is of it is
the naked statement that the relator "was notified by
mail."   To what post office the official notification was
sent, and whether it was sent to the proper post office of
the relator, we are left wholly to conjecture, for the proof
furnishes no information.   It is not necessary, therefore,
to consider whether the legislature, by the revision of 1878,
changed, or intended to change or modify, the construction
of the statute adopted in *State ex rel. Ames v. Southwick*,
13 Wis. 365, as suggested by appellant's counsel at the argu-
ment.

"The word 'qualified,' when applied to any person elected
or appointed to office, shall mean the performance *by such
person* of those things which are required by law *to be per-
formed by him* previous to his entering upon the duties of
his office."   R. S. sec. 4971, subd. 15.   The vital question is
whether the relator *qualified*, within the meaning of the
statute, so as to put an end to the respondent's precarious
tenure of the office, before bringing this action to oust him
and establish his own right.   It is in the main a question
of statutory construction, and upon which cases decided
elsewhere furnish no satisfactory or reliable guide.   The
duty of the officer elect is prescribed in the statute (sec. 701,
R. S.): "Every county officer named in this chapter shall,

before entering upon the duties of his office, and within twenty days after receiving official notice of his election or appointment, or, if not notified, within twenty days after the commencement of the term for which he was elected or appointed, *execute and deposit his official bond,* if any be required, as prescribed by law; and every such officer shall also, within the same time, take and subscribe the oath of office prescribed by the constitution, and deposit the same with his official bond, to be filed and preserved therewith." Official bonds of county officers are required to be executed to the proper county by its corporate name, "*and, after approval thereof,* shall be recorded, at the cost of the officer, in the office of the register of deeds of his county, and shall then be filed with the county clerk; . . . and every such bond, and the sufficiency of the sureties thereto, shall be approved by the chairman of the county board and a committee of not less than two additional members of the board, who shall report their action to the board." R. S. sec. 702.

Beyond all cavil or room for question, the approval of the chairman of the county board and a committee of not less than two additional members would suffice, even upon the strictest view, to complete the bond, so that it might be recorded and filed, and admit the officer elect to his office. These provisions devolve upon the officer elect and the county board mutual and reciprocal duties of a very important character, in order that the officer elect may enter upon his official duties as the successor of the then incumbent, and that proper effect may be given to the duly expressed popular will. The law requires of the county board that it shall take the statutory precaution that the transfer of public authority and trust may be made in a regular and orderly manner, and without risk or detriment to public interest. Instead of doing this, we find that in this case no steps whatever were taken in this direction,

but the county board, whether ignorantly, negligently, or perversely it matters not, practically abdicated their functions in this respect, and left the matter of taking and approving the bonds of county officers to take whatever course it might. We find from the evidence that, although every member of the county board lived along the main line of railway communication with Bayfield, and within an hour's ride of the county seat, and although the chairman and official head of the body had due notice of the exigency requiring immediate action within the three remaining days within which the relator could qualify, instead of calling a meeting of the four members composing the board, he chose to leave the county and to remain absent until the 7th of the following month. Probably, if the four members of the board had voluntarily assembled and approved of the bond, no question would have been made of its sufficiency. Neither the county board, representing *pro hac vice* the interests of the public, nor the respondent, can now be heard to urge a want of approval of the relator's bond occurring under circumstances establishing, presumptively at least, neglect of official duty on the part of the county board. It was their official duty to attend to the matter of the approval of the bond, and the relator was not bound to coerce the performance of that duty by legal process, at the peril of losing his rights. He could not convene a meeting of the board; he could not stay the course of the departing chairman; and it is clear that he performed on his part every essential act to invest him with his official functions as county treasurer *de jure*, and to terminate the official tenure of the respondent. He deposited with the county clerk his official bond and oath on the 24th of January, while there were yet two entire days within which the board could have assembled and taken action. There is no ground for urging that the bond was not sufficient in fact. The answer makes no such issue, and the determina-

tion of the board made after the time for the relator to qualify had expired and after suit, as will be seen hereafter, is entitled to no weight as evidence in that respect.

We think it is plain that the relator performed in due season "those things which were required by law to be performed by him previous to his entering upon the duties of his office," and that he executed and deposited in due season his official bond as required by law; that his rights, and those of the public interested in his succession to the trust to which he had been chosen, are not to be thwarted or defeated by reason of the indifference, negligence, or perversity of those whose duty it was to act promptly and approve the bond. He has certainly done all within his power. The true purpose and intent of the law, and public policy as well, require that the choice of the people at popular elections shall not be defeated by those whose duty it is to render a prompt and ready performance of the duties imposed on them in the transfer of public trusts and duties. The law does not require impossibilities, and we think that at the end of the twenty days the relator's bond, in judgment of law, was approved, and he had a right to enter upon the duties of the office to which he had been elected. He became then *de jure* the county treasurer, while the respondent remained, by reason of his usurpation under color of right, treasurer *de facto*.

We cannot agree to the contention of appellant's counsel that the only remedy for the relator and for the public was by *mandamus* to compel the county board to assemble and act upon the bond,— for committee they had none,— a remedy which he shows is of little or no value, for the reason that the duty required calls for the exercise of judgment and discretion, which cannot be controlled by the courts. Our conclusion is that there was no occasion for a proceeding by *mandamus*, a process that would be likely to last through the greater part of the relator's entire term,

and then to be followed, if successful, perhaps by *quo warranto*, lasting, in all probability, beyond the remainder of it. All that would remain for a lawfully elected treasurer at the end of these suits would be still another action to recover the profits and emoluments of the office, of the right to hold which he had been wholly deprived.

It is argued by counsel for appellant that under this view of the law public interests may be imperiled and suffer, in cases like the present, by officers elect becoming invested with official functions upon depositing insufficient bonds; but the answer to this suggestion is that this may occur in a variety of cases where public officers, having important duties, wholly neglect or refuse to perform them, and the real responsibility for the loss or injury which may occur in such a case as this is justly chargeable to public officials whose inattention, negligence of duty, or perversity of conduct has exposed public rights and interests to detriment or loss. The case of *State ex rel. Ackerman v. Dahl*, 65 Wis. 510–521, is really decisive of the main question. It was there held that the wilful and unjust refusal of the officer required to approve the official bond of a person elected or appointed to an office to give it his approval cannot deprive such person of his office or create a vacancy therein. There is no difference in principle between that case and the present.

2. The county board arrived, it seems, at the same conclusion at its meeting February 7th, when it was moved and carried that the relator's bond had been properly filed, and a committee was appointed to investigate the subject of its sufficiency, resulting in a resolution accepting the bond for $58,000, and calling upon the relator to give a supplemental or additional bond for $23,000, which he failed to do within the period of twenty days named, and thereupon the county board declared the office of county treasurer vacant. It is now insisted that the relator forfeited or

lost all his rights by reason of such failure. The provision of sec. 702, R. S., that "whenever the county board shall deem any such bond insufficient they may, by resolution, require an additional bond, in such sum as they shall direct, . · . . to be executed, approved, and recorded in like manner, and filed within twenty days after notice thereof," must be taken and considered in connection with subd. 8, sec. 962, in respect to what will cause a vacancy in the office, which is "the neglect or refusal of any officer *in office* to execute and file an additional bond, when lawfully required, in the manner prescribed by law." These provisions refer only to officers who are actually *in possession* of their offices, having in their custody the property, money, books, etc., belonging thereto. There is no reason for any such requirement as to one who is or claims to be an officer *de jure* only, and is kept out of possession by one who is merely an officer *de facto*. The first provision imposes the duty, and the second declares the consequence of a neglect to perform it. The words "in office" cannot be rejected. They must be given some appropriate and reasonable effect. The provision cannot have any sensible or reasonable application to one in fact out of office, but has a necessary and important signification as applied to one already in possession. The relator did not obtain possession of his office until several months after the county board declared the office vacant.

These conclusions dispose of all the material points urged for a reversal. We are of the opinion that the judgment of the circuit court is correct, and that it should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.