STATE EX REL. PLUNTZ, Respondent, vs. JOHNSON, Appellant.

*September 21, 1921—February 7, 1922.*

*Sheriffs: Hold-over officers: Eligibility for succeeding term: Appointive and elective sheriffs: Term: Constitutional law.*

1. A sheriff, whether elected or appointed, holds his office until his successor is elected and qualified.
2. Under sec. 4, art. VI, Const., providing that sheriffs shall be ineligible for two years next succeeding the termination of their offices, the period of ineligibility is the term succeeding that for which the sheriff was elected.
3. Thus, where J. was appointed to the office of sheriff during 1917 for the unexpired portion of the term ending January, 1919, and under such appointment held the office until July, 1920, it is *held* that J. was not ineligible to election for the term beginning in January, 1921, even though he held such office nearly four out of four and a half years.

APPEAL from an order of the circuit court for Barron county: W. R. FOLEY, Circuit Judge. *Reversed.*

This is an action in the nature of *quo warranto,* brought upon the relation of *Herman Pluntz,* a resident and taxpayer of Barron county, to oust the appellant from the office of sheriff of that county. A demurrer to the answer was sustained, and from that order the defendant appealed.

For the appellant there was a brief by *Wylie & Sutherland* of Madison, and oral argument by *F. M. Wylie.*

*Spencer Haven* of Hudson, for the respondent.

The following opinion was filed October 18, 1921:

OWEN, J.   The answer alleges that "during the year 1917 defendant was appointed to the office of sheriff of Barron county for the unexpired portion of the term commencing on the first Monday of January, 1917; by virtue of such appointment, and while holding the said office for the unexpired portion of the said term and until his successor for the term commencing on the first Monday of January, 1919, should qualify, defendant performed the duties of sheriff

of Barron county until the month of July, 1920, when his successor for the term commencing on the first Monday of January, 1919, qualified; defendant received a majority of the votes cast at the general election in November, 1920, for the office of sheriff of Barron county for the term commencing on the first Monday of January, 1921, and duly qualified for the said office for the said term, and now holds the same by virtue of such election and qualification."

The averment that the defendant during the year 1917 was appointed to the office of sheriff of Barron county for the term ending on the first Monday in January, 1919, and that he continued to act as such sheriff until July, 1920, at which time his successor qualified, will be noted. If any curiosity should arise concerning the extraordinary length of time intervening between the 1st day of January, 1919, and the time when his successor qualified, the occasion thereof will be explained by a reference to the case of *State ex rel. Knutson v. Johnson,* 171 Wis. 521, 177 N. W. 899. The facts are that *Johnson* was elected to succeed himself as sheriff for the term beginning on the first Monday in January, 1919; and after the decision of this court holding him ineligible to such election, by reason of which a vacancy existed in the office, an appointment to fill the vacancy was made in July, 1920. Such appointee was the successor who qualified in July, 1920. This recital in no manner affects the legal effect of the answer. That document sets forth the situation with legal definiteness, but with a barrenness calculated to excite curiosity, which we feel the above statement may satisfy.

The question presented is whether the defendant, having served under his appointment, made during the year 1917, until July, 1920, was eligible to election for the term commencing on the first Monday of January, 1921. Sec. 4 of art. VI of the constitution provides that "sheriffs shall hold no other office, and be ineligible for two years next succeeding the termination of their offices." If we fix the date

upon which the defendant's office terminated, it can be determined whether he was eligible for election to the office for the term beginning on the first Monday of January, 1921, by a simple mathematical calculation.

It is the defendant's contention that his office terminated on the first Monday in January, 1919. If he had been elected to the office such would have been the case. The section of the constitution already alluded to provides that sheriffs and other county officers shall be chosen by the electors of the respective counties once in every two years. This plainly fixes the term of county officers at two years. The constitution makes no provision as to when such terms shall begin and end, and consequently the statute has provided that they shall begin and end on the first Monday in January in each odd-numbered year. The constitutional provision under consideration does not provide that those elected to the office of sheriff shall hold over until their successors are elected and qualified. The general trend of judicial decisions in this country is to the effect that where the written law contains no provision, either express or implied, to the contrary, an officer is entitled to hold his office until his successor is elected and qualified. While the constitutional provision under consideration provides that sheriffs and other county officers shall be elected for two years and is silent as to their holding over until their successors are elected and qualified, it is also provided in the same section that "all vacancies shall be filled by appointment, and the person appointed to fill a vacancy shall hold only for the unexpired portion of the term to which he shall be appointed *and until his successor shall be elected and qualified.*" In view of the express provision that those appointed to fill a vacancy shall hold until a successor shall be elected and qualified, the conclusion is irresistible that such was not the intention with reference to those who are elected. This conclusion is strengthened, so far as it applies to the office of sheriff, by the provision that sheriffs shall be "ineligible

for two years next succeeding the termination of their offices." So far as the· office of sheriff is concerned, at least, the constitutional purpose seems to have been to constitute an elective term of two years and no more. Such being the term fixed by the constitution, it may not be enlarged by legislative enactment, an effect ascribed by appellant's counsel to sec. 59.12, Stats. So we come to the conclusion that if the defendant had originally come into the office by an election, his office would have terminated on the first Monday in January, 1919. That was the end of the term as fixed by statutory enactment supplementing the constitutional provision upon the subject. As one who is elected to the office of sheriff does not hold over, the end of the term for which he is elected necessarily marks the termination of his office.

But, as we have seen, the constitution provides differently with reference to appointments to fill vacancies in the office of sheriff, if not all other county offices. In such cases the appointment is not only for the unexpired portion of the term, but until a successor shall be elected and qualified. The term for which *Johnson* was originally appointed, therefore, did not necessarily end on the first Monday of January, 1919. He was appointed to hold until that time *and* until such further time as his successor shall be elected and qualified. He himself was elected as his successor. He was ineligible for the office, and, while he pretended to qualify and act under such election, such election furnished him no title thereto. He did have a good title to the office by reason of his appointment, which continued ·him in office until an eligible successor should be elected or appointed and should qualify therefor. This· did not occur until ·July, 1920. His office, therefore, did not terminate until July, 1920, at which time his ineligibility attached disqualifying him from holding the office for two years thereafter. It follows that he ·is not eligible to hold the office for· the term

State ex rel. Pluntz v. Johnson, 176 Wis. 107.

beginning on the first Monday of January, 1921, and that the demurrer to the answer was properly sustained.

. Attorneys for appellant stress the following language used in the opinion in *State ex rel. Knutson v. Johnson,* 171 Wis. 521, 524, 177 N. W. 899:

"By such·appointment it becomes the appointee's office, and the expiration of the two-year period succeeding the election of the predecessor is as much the termination of the appointee's office as it would have been of the official elected had he continued therein. No other term than such particular two-year term is recognized in the constitution. It is the one and same term no matter who the incumbent."

From this it is argued that appellant's term of office under and by virtue of the appointment terminated on the first Monday of January, 1919, and, upon a superficial consideration, there may appear to be a conflict between the language quoted and the statements herein made. But it should be remembered that judicial language should always be limited to the subject under consideration. The question there was when the term, that is, the fixed term, for which the defendant was originally appointed, ended. The fixed term for which he was appointed ended the first Monday in January, 1919. Until that time he had an absolute right to the office the same as though he had originally been elected thereto. Although, as held in that opinion, he legally held over, there was nevertheless a vacancy in the office, and his title thereto after the expiration of the fixed and definite term was defeasible and subject to be terminated whenever an eligible and lawfully elected or appointed successor should qualify therefor. His appointment was really for two periods of time: one was to cover the unexpired portion of the fixed term, and the other for such time thereafter as might elapse before an eligible successor should qualify for the office. The first period was fixed and definite. The latter period was indefinite and uncertain.

While he held the office for more than eighteen months after the expiration of the fixed term under and pursuant to his appointment, he was merely filling a vacancy in the office until some eligible person qualified therefor. While the original term for which he was appointed expired on the first Monday in January, 1919, his office did not terminate until the month of July, 1920, and his ineligibility did not attach until that time.

*By the Court.*—Order affirmed.

On December 13, 1921, a motion by appellant for a rehearing was granted, and on January 16, 1922, briefs were submitted on reargument.

The following opinion was filed February 7, 1922:

Owen, J. In the original opinion filed in this case it is held that an elective sheriff does not hold beyond his term until his successor qualifies. More mature reflection, occasioned by the motion for a rehearing, persuades us that this conclusion was reached without giving sufficient consideration to the history of sec. 4 of art. VI of the constitution, as well as the acts of the legislature constituting a legislative construction thereof, and a number of decisions of this court according judicial acquiescence to such legislative construction. It now appears that in our original consideration of the case undue significance was accorded to that part of the constitutional provision declaring that one appointed to fill a vacancy shall hold office "until his successor shall be elected and qualified." Without taking into consideration the history of this provision, the fact that the framers of the constitution specifically provided that one appointed to fill a vacancy should hold until his successor is elected and qualified, there being no similar provision with reference to elective officers, naturally led to the conclusion that it was not intended that an elective officer should hold beyond his term.

As this section originally appeared in the constitution, it

provided that "sheriffs, coroners, registers of deeds, and district attorneys shall be chosen by the electors of the respective counties, once in every two years, and as often as vacancies shall happen." This provision necessitated an election whenever a vacancy occurred in one of those offices, and this court was forced to hold in *Att'y Gen. ex rel. Schantz v. Brunst,* 3 Wis. 787, that such an officer held his office for a term of two years, which necessitated a special election for his successor at the end of the term. This brought about an irregular occurrence of elections, to dispense with which, as well as to provide for biennial general elections, an amendment to the constitution was adopted in 1882 amending certain provisions thereof, among which were sec. 4 of art. VI and sec. 12 of art. VII. By the amendment to sec. 4 it was provided that vacancies occurring in the offices therein named should be filled by appointment, and that the person appointed should hold for the unexpired portion of the term. Sec. 12 of art. VII relates to the office of clerk of the circuit court. As originally adopted it provided that "in case of a vacancy, the judge of the circuit court shall have the power to appoint a clerk, until the vacancy shall be filled by an election," and that the clerk thus "elected shall hold his office for a full term." As amended it provides that a vacancy occurring in the office of the clerk of the circuit court shall be filled by appointment, and while it is not specifically provided that such appointee shall serve for the unexpired term, such undoubtedly was the purpose of that provision.

It is contended by appellant that the specific provision of the amendment to sec. 4 of art. VI that "all vacancies shall be filled by appointment, and the person appointed to fill a vacancy shall hold only for the unexpired portion of the term to which he shall be appointed and until his successor shall be elected and qualified," was inserted because the application of the hold-over doctrine to appointees to fill vacancies was not then well established, if in fact it has any

application even at this time. This contention is not without force. But whether such was the purpose of the quoted language of the amendment, it is certain that it is not entitled to much significance in construing the original portion of that section. Whether it was the purpose of the framers of the constitution that sheriffs and other officers mentioned in sec. 4 of art. VI should hold office until their successors are elected and qualified must be determined from a construction of the original language independent of the amendment. As stated in the original opinion, the general trend of decisions in this country is to the effect that, where the written law contains no provision either express or implied to the contrary, an officer holds his office until his successor is elected and qualified. This rule of construction prevents the inconvenience and annoyance resulting from the suspension of official functions because there is no officer authorized to discharge such functions. As the section was originally adopted, there is nothing which negatives a purpose on the part of the framers of the constitution that the officers mentioned therein should hold until their successors shall be elected and qualified, and the reasons assigned for the contrary ruling in the original opinion lose much of their force when it is understood that the language relied upon to negative such an intent was introduced into the constitution more than thirty years after its adoption.

We not only fail to discover anything in the section as originally adopted which negatives the right of the officers there mentioned to hold over their terms and until their successors shall be qualified, but evidence that such was the purpose of the framers of the constitution appears by the fact that sec. 59.12 of the Statutes, which provides that the county officers shall hold their offices until their successors qualify, first appeared in the statutes of this state as sec. 141 of ch. 10 of the Revised Statutes of 1849. This amounts to contemporaneous legislative construction of this constitutional provision, which construction is entitled to

7] JANUARY TERM, 1922. 115

State ex rel. Pluntz v. Johnson, 176 Wis. 107.

great deference. *Dean v. Borchsenius,* 30 Wis. 236; *State ex rel. Hudd v. Timme,* 54 Wis. 318, 11 N. W. 785; *Coutant v. People,* 11 Wend. 511; *People v. Green,* 2 Wend. 266. The constitutionality of this statute has never been challenged, and has apparently been accepted and acquiesced in by all departments of state government as establishing the tenure of office for all county officers. Furthermore, this court has expressly held in at least three cases that county officers hold their offices until their successors are elected and qualified. In *State ex rel. Prince v. McCarty,* 65 Wis. 163, 26 N. W. 609, it was said that a county clerk having been elected to the office had the right to hold it until his successor was qualified. In *State ex rel. Warden v. Knight,* 82 Wis. 151, 50 N. W. 1012, 51 N. W. 1137, it was said concerning a county treasurer that "the tenure of office of the respondent, as the incumbent of the office of county treasurer at the time the relator was elected, was until the first Monday of January next thereafter, and until his successor should be qualified." And in *Sheboygan Co. v. Gaffron,* 143 Wis. 124, 126 N. W. 542, this court said that the superintendent of schools is a county officer, and his term of office, like that of other county officers, continues for two years and until his successor is qualified. As the terms of all county officers are fixed by sec. 4 of art. VI, whether the offices are created by statute or by the constitution, the decisions just referred to apply as well to those officers specifically mentioned in said sec. 4 as to the officers whose offices are created by the statute.

Sec. 12 of art. VII of the constitution created the office of clerk of the circuit court. As originally adopted it simply provided that this officer "shall hold his office for two years, subject to removal, as shall be provided by law." Under this provision it was said in *State ex rel. Allen v. Lyon,* 45 Wis. 246, decided in 1878, that "as a matter of course the defendant would hold the office until the commencement of his successor's term;" and prior to the adoption of our con-

stitution it had been decided in New York, from which state, it was said in *Att'y Gen. ex rel. Schantz v. Brunst,* 3 Wis. 787, sec. 4 of art. VI was taken, that a sheriff held his office until his successor was elected and qualified. *Curtis v. Kimball,* 12 Wend. 275 (decided in 1835) ; *Hinds v. Doubleday,* 21 Wend. 223 (decided in 1839).

From these considerations, which were not called to our attention upon the original argument, we are now convinced that our former conclusion proceeded from an erroneous assumption.    It therefore follows that, with respect to holding over, the elective and the appointive sheriff are on the same basis.    The appointive sheriff holds over by virtue of the express provisions of the constitution.    The elective sheriff holds over by virtue of the statutory provision, if indeed such would not be the case under rules of construction independent of the statute.

We now come to a reconsideration of the question whether a sheriff, by the act of holding over, becomes disqualified from again holding the office for a period of two solar years.    If such be the case, then it is apparent that a sheriff who holds over for a day by reason of the failure of his successor to qualify, circumstances over which he has no control, becomes ineligible for the next succeeding term. Such a rule would not only be harsh, and in many instances deprive the electors of an official of their choice, but it would seem to bear no relation to the obvious purpose of the disqualifying provision of the constitution.    That provision was no doubt inserted because it was thought the sheriff had extraordinary powers which could be exercised for the purpose of influencing the electors and thereby perpetuating himself in office.    As was said by Mr. Chief Justice DIXON in *State ex rel. Ames v. Southwick,* 13 Wis. 365: "We are certain that they considered the allurements of an immediate re-election to the office of sheriff too powerful even for the virtue and manhood of a sovereign."    In *Coutant v. People,* 11 Wend. 511, the chancellor refers to

the proceedings of the constitutional convention of New York relating to a similar disqualifying provision in the constitution of the state, wherein it was said by one of the delegates that he should be "opposed to the election of sheriffs by the people if the elections were to be annual, and the sheriff to attend the polls with executions in his pocket, and deputies at his heels." "But give him three years for the duration of his office, and make him ineligible for the next three years, so that he may not suspend the collection of debts with a view to his re-election." And again the same delegate said: "It is proposed that the sheriff shall hold his office for a given time, and then be ineligible for a time; by which means he cannot turn his influence while in office to the purposes of a re-election."

If such were the motives which influenced the adoption of the disqualifying provision, it is apparent that the purpose of the provision was to prevent the sheriff from using influences at his command to perpetuate himself in office. It is true the constitutional provision under consideration provides that he shall be disqualified for the next two years. But does not this mean the next term? The same section fixes the term of the sheriff at two years. It provides that he shall be disqualified for the next two years. Manifestly it would have been more definite to have created the disqualification for the next term. But when the obvious purpose of the disqualifying provision is considered, and it appearing that the term of the sheriff is fixed at two years, is not the disqualifying provision of two years to be construed as synonymous with the term of the office? Such a construction will not detract from the virtue of the provision. Its obvious purpose will be conserved, public business will not be suspended, as when one elected to office delays in qualifying therefor, nor will one elected to the office of sheriff be disqualified for four instead of two years by virtue of circumstances over which he has no control. This construction gives full force to the purpose which prompted

the adoption of the disqualification, is more conducive to the public welfare, and minimizes the restraint upon the right to hold office as well as the choice of electors for office.

Upon more mature consideration, it would seem that a construction of sec. 4 of art. VI in conformity with the foregoing views is not only the more reasonable, but has the support of authority, affirms the practical construction accorded to it by all departments of state government throughout the years of our statehood, and better promotes the public welfare. We therefore hold that one elected to the office of sheriff retains the office until his successor is elected and qualified, and that the two-year period of disqualification mentioned in the constitution relates to, and is synonymous with, the term of the office next succeeding that for which the sheriff is elected or appointed. It follows that although the appellant, *Johnson,* held over for a period of a year and a half, he was nevertheless qualified for election to the office of sheriff for the term beginning on the first Monday in January, 1921; that the complaint states no cause of action; and that the demurrer thereto should have been sustained.

This permits the appellant to hold the office of sheriff for a period of about four out of four and a half years. This seems like trifling with the constitutional provision we have been considering, and we are not disposed to deny that this eventuality had its influence upon our original consideration of this case. It is a familiar saying that hard cases make bad law, and as we now view the matter our effort to prevent what seemed a defiance of constitutional provisions on the part of appellant would have resulted in an unfortunate construction of the fundamental law if our original decision were permitted to stand. The circumstances which have permitted appellant to enjoy what seems an unconstitutional tenure of office are peculiar, and are due somewhat to the delays incident to the administration of justice, as it

State ex rel. Pluntz v. Johnson, 176 Wis. 107.

required a year and a half to obtain a decision of this court that he was disqualified for holding the office during the term succeeding that for which he was appointed. Although this seeming flouting of constitutional provisions may be resented, some solace is offered in the thought that the result has been in nowise offensive to a majority of the electors of Barron county, as the appellant was their deliberate choice, uninfluenced by any powers of persuasion appertaining to the office of sheriff, he not being an incumbent of that office when elected for the present term.

But however this may be, it is more conducive to justice to intrench sound and abiding principles in our jurisprudence by which justice is to be declared throughout the years, even though the immediate result may not be viewed with favor, than to accommodate settled and well considered principles to immediate necessities, so that during the course of time they become so warped and distorted that the citizen has no rule or guide for lawful conduct. It is more important that fixed rules of conduct be maintained, so that the individual may know when he is acting within the law, than to impair such rules in an effort to administer justice in accordance with the views of the judge in each individual case, resulting in a system of jurisprudence where, in order to know what he may lawfully do, the individual must conjecture concerning the abstract notions of justice which may be entertained by the judge before whom his case will be tried. It is believed the conclusion now reached in this case announces a construction of the constitutional provision involved that embodies good public policy and fully accomplishes the purpose of its adoption.

*By the Court.*—The former judgment entered herein is vacated. The order appealed from is reversed, and the cause remanded with directions to sustain the demurrer.