SCHULTZ and another, Respondents, vs. MILWAUKEE COUNTY and others, Appellants.

*February 16—March 14, 1944.*

For the appellants there was a brief by *James J. Kerwin,* district attorney, and *O. L. O'Boyle,* corporation counsel, and oral argument by *Mr. O'Boyle.*

*Joseph H. Swerdloff* and *Gene Posner,* both of Milwaukee, for the respondents.

ROSENBERRY, C. J.    Sec. 4 of art. VI of the constitution of the state of Wisconsin provides as follows:

"Sheriffs, *coroners,* registers of deeds, district attorneys, and all other county officers except judicial officers, shall be chosen by the electors of the respective counties once in every two years. . . ."

The contention of the plaintiffs is that the enactment of ch. 247, Laws of 1943, takes away from the constitutional office of coroner all its duties with the exception of serving papers upon the sheriff; and when there is no sheriff or undersheriff in any county to exercise the powers and duties of sheriff, thus removing from the office of coroner those duties which are most distinctive and characteristic of it. This it is contended is beyond the authority of the legislature, the office of coroner being a constitutional office.

It is to be noted that the constitution provides for the office of coroner and sheriff in the same section. The legislature of 1870 sought by the enactment of ch. 332, P. & L. Laws, to

take away from the sheriff the custody and care of prisoners confined in the county jail of Milwaukee county and transfer it to the inspector of the house of correction of the county of Milwaukee. The sheriff refused to make the transfer and the inspector sought a writ of *mandamus* from this court to compel the sheriff to comply with the statute. The matter was heard and the writ was denied. The court said:

"The office of sheriff, in a certain sense, is a constitutional office; that is, the constitution provides that sheriffs shall be chosen by the electors of the respective counties, once in every two years and as often as vacancies shall happen. Sec. 4, art. 6. Now, it is quite true that the constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff. But there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted. Among those duties, one of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein. This is apparent from the statutes and authorities cited by the counsel for the respondent. And it seems to us unreasonable to hold, under a constitution which carefully provides for the election of sheriffs, fixes the term of the office, etc., that the legislature may detach from the office its duties and functions, and transfer those duties to another officer." *State ex rel. Kennedy v. Brunst* (1870), 26 Wis. 412, 414.

Counsel for the defendants urges that *State ex rel. Kennedy v. Brunst, supra,* should be overruled, (1) because if the theory of that case is literally followed, it would mean not only that sheriffs, registers of deeds, district attorneys, and all other county officers which would include the treasurer, clerk of circuit court, surveyor, and county clerk would have all of the powers and prerogatives of the corresponding office at common law without any right or authority on the part of the legislature to restrict them. Counsel overlooked *State ex*

*rel. Williams v. Samuelson* (1907), 131 Wis. 499, 507, 111 N. W. 712, in which case it was held that the term "all other county officers" incorporated into sec. 4 of art. VI of the constitution by amendment in 1882, means the heads of the several major divisions of county government existing at that time, and the section as amended does not take away the legislative power mentioned in sec. 9 of art. XIII to create other county offices with other duties and to provide for the manner of filling such offices and the terms thereof.

That question was further dealt with in *State ex rel. Gubbins v. Anson* (1907), 132 Wis. 461, 112 N. W. 475.

We find no ground upon which we would be justified in overruling *State ex rel. Kennedy v. Brunst, supra.* It is in accord with the great weight of authority in this country. See note and cases cited 4 A. L. R. 205, continued 37 A. L. R. 815.

The appellants further contend that the jurisdiction to hold inquests is not under the law of this state one of the distinctive and characteristic duties attached to the office of coroner. If the holding of inquests is not a duty which is distinctive and characteristic of the office, then ch. 247, Laws of 1943, is not within the rule of *State ex rel. Kennedy v. Brunst, supra. State ex rel. Gubbins v. Anson* (1907), 132 Wis. 461, 466, 112 N. W. 475.

The care and custody of prisoners which was the function removed from the office of sheriff by the act under consideration in *State ex rel. Kennedy v. Brunst, supra,* was a function that had been attached to the office of sheriff from time immemorial. The jurisdiction to hold inquests is not in that respect comparable to the function of having the custody and care of prisoners. Originally the holding of an inquest was. not a part of the duty of a coroner. His principal function was to guard the pecuniary interests of the crown. In the performance of that duty he had wide and varied powers. 1 Holdsworth, History of English Law, p. 82. The duties

and functions of a coroner underwent marked change from time to time. Of these changes Holdsworth (p. 86) says:

"Changes in the judicial system and changes in substantive law rendered obsolete many of the duties of the coroner. When the general eyre ceased, his rolls ceased to be of such great importance to the itinerant justices; and the abolition of criminal appeals, approvers, sanctuary, and abjuration, and the practical abolition of outlawry took away many of his duties. The coroner's act of 1885 expressly abolished others. . . . His chief surviving duty is to act for the sheriff in executing process in cases where the sheriff has an interest in the proceedings; and the chief functions performed at his court are to hold inquests in cases of unexplained death, and as to the concealment of treasure trove."

The point of these observations is that the duties of the office of coroner underwent fundamental changes from time to time. In 1885 many of the duties were abolished and other duties prescribed by statute.

By the territorial statutes of 1839 (p. 91, sec. 1) it was provided:

"That there shall be elected in each of the organized counties in this territory, a coroner, whose term of service shall be for two years, and whose duty it shall be to execute all process in their respective counties, in all cases when just exception can be taken to the sheriff or his deputy, or when there is no sheriff . . . it shall be the duty of the clerk to issue and direct original or other process in the suit, to the coroner. . . ."

The second section provided "That coroners shall take inquest upon the view of the dead bodies of such persons only as shall be supposed to have come to their death by violence, and not when the death is believed to have been, and was evidently, occasioned by casualty."

The procedure prescribed for holding inquests was elaborate and in general followed the procedure employed in the holding of inquests today. Sec. 13 provided:

"That in case of the absence of the coroner, any magistrate being notified of any dead body, as before mentioned, shall be authorized to appoint some suitable person, to hold an inquest on the same, who shall have the same powers that are hereby conferred on the said coroner."

These provisions of the territorial statutes of 1839 were repealed by the adoption of the statutes of 1849. After the adoption of the constitution in 1848, commissioners were appointed to collate and revise the statutes of 1849. By the statutes of 1849 it was provided that a coroner should be elected for the term of two years, and by secs. 100, 101, and 102, ch. 10, the coroner was authorized to act for the sheriff under the circumstances there described. He did not have jurisdiction to hold an inquest.

Sec. 1, ch. 152, Stats. 1849, provided:

"Justices of the peace shall take inquests upon the view of the dead bodies of such persons as shall be supposed to have come to their death by violence; but no such inquest shall be taken when the death is believed to have been, and was evidently, occasioned by casualty."

This is nearly the exact language in which jurisdiction was conferred upon the coroner to hold inquests by the statutes of 1839. Justices of the peace were not authorized to appoint other persons to hold inquests. Justices of the peace continued to have exclusive jurisdiction to hold inquests until the enactment of ch. 12, Laws of 1883, which provided:

"In all cases where an inquest of the dead is or ought to be taken, the same may be taken by the coroner of the county, who, for the purpose, may perform all the duties, has all the jurisdiction and powers and is entitled to the same fees as a justice of the peace of said county."

The statute as amended by ch. 12, Laws of 1883, became sec. 4865, Stats. 1898, which provided:

"Coroners and justices of the peace shall take inquests upon the view of dead bodies of such persons as shall be supposed

to have come to their deaths by violence or casualty within their respective counties, unless otherwise provided. . . ."

This section also conferred upon coroners the authority to perform all the duties and exercise all the jurisdiction of a justice of the peace in the holding of an inquest.

By ch. 314, Laws of 1905, sec. 4865, Stats., was amended to read:

"Whenever the district attorney shall have notice of the death of any person within his county and from the circumstances surrounding the same there is good reason to believe that murder or manslaughter has been committed, he shall forthwith order and require the coroner or some justice of the peace therein to take an inquest on the view of the dead body of such person. . . ."

This section likewise conferred upon coroners the powers of justices of the peace with respect to holding of inquests.

Justices of the peace continued to have primary jurisdiction with respect to holding inquests until the enactment of ch. 450, Laws of 1929. Sec. 4865, which had become sec. 366.01, Stats., provided:

"Whenever the district attorney shall have notice of the death of any person within his county and from the circumstances surrounding the same there is good reason to believe that murder or manslaughter has been committed, he shall forthwith order and require the coroner, deputy coroner or in the event of the absence or disability of the coroner, or any deputy coroner, some justice of the peace therein to take an inquest on the view of the dead body of such person. . . ."

Sec. 366.02, Stats., provided:

"Whenever any coroner, deputy coroner or justice of the peace shall hold an inquest, he shall issue a precept," etc.

Thus by the enactment of ch. 450, Laws of 1929, the jurisdiction of the justice of the peace to hold an inquest was made subordinate to that of a coroner and deputy coroner.

The legislative enactments referred to were general in their character, but by the enactment of ch. 189, Laws of 1909, sec. 4878, Stats. 1909, it was provided:

"In each and every county whose inhabitants exceed in number one hundred and fifty thousand all the duties mentioned in the foregoing sections of this chapter shall be performed by the·coroner thereof. . . ."

In such counties by the enactment of that section justices of the peace were for the first time in the history of the state ·deprived of the jurisdiction to hold inquests.

In the consideration of this matter it is significant that at the very first session of the legislature after the adoption of the constitution coroners were deprived of all jurisdiction to hold inquests, and it was not until 1883, thirty-five years after the adoption of the constitution, that coroners were authorized to hold inquests. Even in that event they were to exercise the same duties, jurisdiction, and powers as a justice of the peace acting in the same capacity.

It is to be noted that at the session of the first legislature under the new constitution, by ch. 152, Stats. 1849, there was conferred upon justices of the peace the exclusive jurisdiction to hold inquests. There were a number of members of the constitutional convention in the legislature of 1849. There were also in the legislature of 1849 many able lawyers, yet no objection seems to have been made to the enactment of ch. 152. The constitution as adopted had been considered in two constitutional conventions and the people had twice passed upon it, once rejecting and once ratifying. For more than thirty years no one questioned the propriety of depriving the coroner of the right to hold an inquest. It was not until 1909 that exclusive jurisdiction was conferred upon him and then only in counties having a population of one hundred fifty thousand or more. It appears from the early history of the office that duties of the coroner were frequently changed, and

that the holding of inquests was in the beginning a mere incident to wider and more important powers.

While in Milwaukee county the coroners had exclusive jurisdiction of inquests for thirty years, that is not significant for the reason that the question is, What was the situation in 1849? Practical construction extending over a period of fifty years is most persuasive and convincing in the construction of constitutional provisions. While it is true that the present generation associates the holding of inquests with the office of coroner and not with that of justice of the peace, that is merely an indication of a condition that has developed in the last thirty years.

The rule of practical construction as applied to constitutions has been approved many times by this court. In *Dean v. Borchsenius* (1872), 30 Wis. 236, 246, it was said:

"The uninterrupted practice of a government prevailing through a long series of years, and the acquiescence of all its departments, legislative, executive and judicial, sometimes becomes imperative even on constitutional questions. If ever there were such a case, this would seem to be one."

This language was used in a case involving the validity of a special-assessment law.

In *State ex rel. Hudd v. Timme* (1882), 54 Wis. 318, 341, 11 N. W. 785, the rule was applied in the construction of an amendment to the constitution, holding that several different propositions might constitute one amendment. The court said:

"Authorities upon this question might be multiplied to an almost unlimited extent; but those cited are sufficient to justify us in giving great weight to the practical construction given to the provision of the constitution now under consideration, by the legislative, executive and judicial departments of the state, frequently ratified and approved, without raising any voice of dissent, by the people during a period of over fifteen years, *and would compel us to affirm such construction*

*although we might have entertained some serious doubts as
to the real meaning thereof."*

In *State ex rel. Pluntz v. Johnson* (1922), 176 Wis. 107,
114, 184 N. W. 683, 186 N. W. 729, the court had under
consideration the term of the sheriff's office. It was claimed
that under the constitution the sheriff could not hold over.
The court said:

"This amounts to contemporaneous legislative construction
of this constitutional provision, which construction is entitled
to great deference. [Citing cases.] The constitutionality of
this statute has never been challenged, and has apparently been
accepted and acquiesced in by all departments of state govern-
ment as establishing the tenure of office for all county offi-
cers."

See also *Nunnemacher v. State* (1906), 129 Wis. 190, 220,
109 N. W. 627; *Payne v. Racine* (1935), 217 Wis. 550, 556,
259 N. W. 437; *State ex rel. Owen v. Donald* (1915), 160
Wis. 21, 111, 151 N. W. 331.

It was applied in *State ex rel. Atwood v. Johnson* (*Soldiers'
Cash Bonus*) (1919), 170 Wis. 218, 234, 175 N. W. 589.
There are other cases to the same effect.

The fact that for so many years the right to hold inquests
was not treated as one of the distinctive characteristics of the
office of coroner indicates very strongly that it was not so
considered by the framers of the constitution. If vesting the
right to hold inquests in a justice of the peace instead of a
coroner was an exercise of power denied to the legislature by
the constitution, the men who framed the constitution who
were then serving in the legislature, would certainly have pro-
tested.

It is considered that under our law the holding of inquests
was not such a distinctive and characteristic feature of the
office of coroner at the time of the adoption of the constitution
as to deprive the legislature of power to create another office

and impose the duty to hold inquests upon it. While it is true that for many years the power was imposed upon justices of the peace, and that they were constitutional and elective officers, that is not controlling. If it is within the power of the legislature to transfer the duty of holding inquests at all, it is clearly within the power of the legislature to transfer it to such officer as it may designate. For the reasons stated it is considered that ch. 247, Laws of 1943, is not within the rule of *State ex rel. Kennedy v. Brunst, supra,* and is valid.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment sustaining the validity of ch. 247, Laws of 1943.

FAIRCHILD, J. (*dissenting*). The result may be desirable but I do not believe the legislature can have the power to proceed with the enactment of ch. 247, Laws of 1943, as it did until the people have given their consent by a constitutional amendment.

Certain governmental functions pertaining to particular officers were regarded as of enough consequence in the promotion of public order and welfare to warrant retaining them in their then existing form and guarding them by constitutional provision. It was provided in sec. 4, art. VI, of the Wisconsin constitution that "Sheriffs, coroners, registers of deeds, district attorneys, and all other county officers except judicial officers, shall be chosen by the electors of the respective counties once in every two years."

The majority, although adhering to the principle recognized as sound in *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, still sustained the validity of the legislative act on the ground that the holding of inquests was not such a "distinctive and characteristic feature of the office of coroner at the time of the adoption of the constitution as to deprive the legislature of power to create another office and impose the duty to hold inquests upon it."

However, this duty was then considered by the authors of the constitution to be among the principal duties of the office of coroner. At the time of the adoption of the constitution, Act 5, General Acts of 1836, was in effect. That law prescribed the duty of a coroner. He was to conduct and hold inquests on the dead. The rules interpreting such provision, and reading the language used, place this duty in the constitutional plan upon the coroner. It was among the principal duties of the office of coroner. The nature of the duties are judicial and some consideration ought to be given to the plan organized, which provided that the office be filled by an election.

The duty of holding an inquest under the common law and under the law of most of the states is one of the important incidents of the office of coroner. 13 Am. Jur. p. 106, sec. 2; 18 C. J. S. pp. 288, 293, secs. 1, 13. Relieved of this duty the office becomes an empty one and, except for very infrequent discharge of certain duties of the sheriff in his absence and the performance of certain obsolete obligations relating to inquiries concerning treasure trove and shipwreck, the office of coroner is stripped of its function. It does not seem that the legislature was acting in accordance with provisions set forth by the authors of the constitution in creating a constitutional office regarded as important enough to be filled by an official elected by the people.

It is true that for a number of years after the adoption of the constitution, the conduct of the inquest was placed in the hands of the justice of the peace. But regardless of whether that practice was justified, it still must be remembered that even that office carried with it some judicial power, was a constitutional office and the official elected by the people. Here, duties incident to an office created by constitutional provision are transferred by the legislature contrary to that constitutional provision, to an office to be filled by one chosen for a different term and by appointment instead of election.

This court, in *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N. W. 712, recognized the right of the legislature to create new county offices, but it also made plain, page 512, its recognition of a rule which I have always deemed to be a part of our constitutional system, that "so long as the duties of the office are not such as were incident to some county office at the time of the formation of the constitution" the legislature could act. Those duties are now taken from where the constitution fixed them and transferred to an office newly created and to be filled otherwise than by an election by the voters.

For these reasons, I believe the judgment of the circuit court should have been affirmed.