Rodney W. RIPLEY, Plaintiff-Appellant,

v.

John L. BROWN, Washburn County Clerk and Washburn County, Defendants-Respondents-Petitioners.

Supreme Court

*No. 86–2027. Argued February 2, 1988.—Decided April 26, 1988.*

(Also reported in 422 N.W.2d 608.)

For the defendants-respondents-petitioners there was a brief by *Jeffrey R. Kohler,* district attorney, Shell Lake, and oral argument by *Jeffrey R. Kohler.*

For the plaintiff-appellant there was a brief and oral argument by *Eugene D. Harrington,* Spooner.

Amicus curiae briefs were filed by *Margaret L. O'Donnell,* assistant corporation counsel, with whom on the brief was *Cal W. Kornstedt,* Dane county corporation counsel; *John K. O'Connell,* Wisconsin Counties Association, Madison and *Michael R. Fox, Rosemary J. Fox* and *Fox, Fox, Schaefer & Gingras, S.C.,* Madison.

HEFFERNAN, CHIEF JUSTICE. This case comes to us by a petition of Washburn county and John L. Brown, the Washburn county clerk, to review a decision of the court of appeals.[1] In that decision, the court of appeals reversed a summary judgment dismissing an action which sought to have a portion of sec. 59.12, Stats., declared unconstitutional. The appeal was taken from the judgment of the circuit court for Washburn county, Dennis C. Bailey, circuit judge. We reverse the court of appeals.

---

[1]*Ripley v. Brown,* 141 Wis. 2d 447, 415 N.W.2d 550 (Ct. App. 1987).

The issue in this case is the constitutionality of sec. 59.12, Stats.,[2] which allows the office of county surveyor in counties of under 500,000 population to be an appointive position, rather than an elective office.

The parties stipulated to the facts. Ripley is a registered land surveyor. He wished to run for the office of Washburn County Surveyor. He requested that John L. Brown (Brown), the Washburn county clerk, place his name on the ballot for the November 1984 general election.

Brown, however, refused, because in November 1982 the Washburn County Board of Supervisors, acting pursuant to sec. 59.12, Stats., had adopted a resolution designating that the duties under secs. 59.60 and 59.635 could be performed by a registered land surveyor. This same resolution directed the county clerk to remove the office of county surveyor from the November 1984 general election ballot.

At the next board meeting following Ripley's request to Brown, the board prepared to act under the authority of the resolution and appoint a surveyor.

[2]Section 59.12, Stats., provides in part:

"**59.12 County officers; terms.** A county clerk, treasurer, sheriff, coroner, clerk of circuit court, district attorney, register of deeds and surveyor, who shall be a registered land surveyor, shall be elected in each county for full terms at the general election held in each even-numbered year. The regular term of office of each such officer shall commence on the first Monday of January next succeeding his election and shall continue 2 years and until his successor qualifies. In lieu of electing a surveyor in any county, the county board may, by resolution designate that the duties under ss. 59.60 and 59.635 be performed by any registered land surveyor employed by the county .... In counties having a population of 500,000 or more, no county coroner or county surveyor shall be elected. In any county in which a medical examiner system is instituted, no coroner shall be elected."

The board interviewed several candidates, including Ripley, but Ripley was not selected.

Thereafter, on October 26, 1984, Ripley brought an order to show cause in the circuit court why his name should not be added to the ballot. After several procedural delays,[3] the trial court, on May 12, 1986, ordered the dismissal of Ripley's claim. The trial court held that Ripley had not sustained his burden of proving the statute unconstitutional. Judgment of dismissal was entered on October 7, 1986.

Ripley appealed the judgment to the court of appeals, which requested the Attorney General's office to file briefs. That office argued that the statute was unconstitutional. The court of appeals agreed and reversed the trial court's finding of constitutionality.

The court of appeals concluded that, under the 1907 case of *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N.W. 712 (1907), the question of whether a surveyor had to be elected or could be appointed was not in doubt. The court of appeals felt it was bound by language—albeit dicta—in that case that appeared to classify surveyors as part of a group of officers that must be popularly elected under the constitution as amended in 1882.[4] Therefore, the court held that,

---

[3]The trial court adjourned the action because Ripley failed to serve notice on the Wisconsin Attorney General as required under sec. 806.04(11), Stats. Subsequently, the Attorney General was notified, but that office ultimately refused to intervene, and the trial action went forth without the Attorney General.

[4]Originally, art. VI, sec. 4, as adopted in 1848 provided in part:

"Sheriffs, coroners, registers of deeds and district attorneys shall be chosen by the electors of the respective counties, once in every two years, and as often as vacancies shall happen."

In 1882, this section was amended to read:

because a county surveyor was mentioned as a county officer, the *Samuelson* case determined the office constitutionally to be an elective one thereafter, unless the constitutional requirement for election was changed. The court noted that the portion of sec. 59.12, Stats., which allowed a registered land surveyor to be employed, to perform the duties under secs. 59.60 and 59.635, was a statutory change and, hence, did not alter the constitutional requirement of election.[5]

> "Sheriffs, coroners, registers of deeds, district attorneys, *and all other county officers, except judicial officers* shall be chosen by the electors of the respective counties, once in every two years." (Emphasis supplied.)

As well as adding the underscored language, the phrase "and as often as vacancies shall happen," which appeared at the end of the original section, has been deleted by the amendment.

This section has also been subsequently amended. None of these amendments affect the present action with the exception of the 1965 amendments which are discussed below.

The 1982 amendments (the most recent) alter the language quoted above by inserting the word "elected" preceding "county officers" (*i.e.,* the current section provides, "Sheriffs, coroners, registers of deeds, district attorneys, and all other *elected* county officers . . . ."). (Emphasis supplied.) However, because this change appears with no explanation in the drafting records, and because it does not obviously change the previous meaning, we assume that it was simply intended to clarify the existing (1882) amendment.

[5]Moreover, *Samuelson* referred to surveyors as county officers only at times prior to the period actively under consideration in *Samuelson, e.g.,* the dicta relied upon was the following statement, beside the point at issue in *Samuelson* and temporally irrelevant to the status of county surveyor in 1907:

> "At the time of the adoption of the constitution there was a county system of government with the ordinary principal heads, such as sheriffs, coroners, district attorneys, county treasurers,

690

Going beyond the *Samuelson* case, the court of appeals believed it found further support for its reasoning that, constitutionally, the office must be elective. The court noted that, when the people in 1965 abolished the office of county surveyor in counties of over 500,000 population, it was done by means of a constitutional amendment. Thus, the court reasoned that, because that change had been made by constitutional amendment, it demonstrated the legislative reasoning that a statutory change such as that made by the portion of sec. 59.12, Stats., allowing county surveyors to be appointed was not intended to alter a constitutional requirement for election of county surveyors in other counties. The court of appeals assumes what is not the fact, that the constitution ever required the election of a county surveyor.

The burden of proving unconstitutionality is a heavy one, and unconstitutionality must be proved beyond a reasonable doubt. *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 506, 261 N.W.2d 434 (1978), *accord County of Milwaukee v. Proegler,* 95 Wis. 2d 614, 629, 291 N.W.2d 608 (Ct. App. 1980). The presumption of constitutionality attends every statute.

county surveyors, registers of deeds, county commissioners, and clerks of such commissioners ...." 131 Wis. at 510.

The issue in *Samuelson* was whether a county supervisor of assessments had to be popularly elected, because, it was argued, all county officers had to be elected under the constitution of 1882. The holding was that the county supervisor of assessments need not be popularly elected because, *inter alia,* the constitution of 1848 did not provide for the election of the assessment supervisor. It is clear that neither the constitution of 1848 nor any subsequent constitutional amendment ever specifically required the election of the surveyor.

.

*State ex rel. Hammermill Paper Co. v. La Plante,* 58
Wis. 2d 32, 46, 205 N.W.2d 784 (1973). To prevail,
plaintiff must do more than show that, under the dicta
of a 1907 opinion of this court, the statute might be
unconstitutional. The plaintiff must show beyond a
reasonable doubt that the statute is unconstitutional.

The *Samuelson* case was not about county surve-
yors, but about county assessment supervisors. The
case is not in point. The focus of that case was whether
the term of office of an assessor could be set by the
legislature at three years, in the face of the newly
enacted 1882 constitutional requirement under art.
VI, sec. 4, that "all other county officers except
judicial officers" be elected for a two-year term.
*Samuelson,* 131 Wis. at 503. As *State ex rel. Pluntz v.
Johnson,* 176 Wis. 107, 113, 184 N.W. 683, 186 N.W.
729 (1922), pointed out, the purpose of the 1882
constitutional amendments was to avoid the irregular-
ity of elections which had arisen under the original
language of the section.

Moreover, the *Samuelson* court's result does not
support the court of appeals' reasoning in this case. In
*Samuelson,* the court noted that to read literally a
requirement that "all other county officers" be elected
every two years would impliedly repeal art. XIII, sec.
9, which allows that county officers whose election is
not provided for under the constitution be either
elected or appointed.[6] Stating that implied repeals are

---

[6]The pertinent text of art. XIII, sec. 9, is:

"All county officers whose election or appointment is not
provided for by this constitution shall be elected by the electors of
the respective counties, or appointed by the boards of supervisors,
or other county authorities, as the legislature shall direct. . . ."

not favored, the court noted that "[i]t would be an extraordinary restriction upon legislative power to so tie its hands as to disable it from creating any sort of an office, however insignificant, pertaining to a county to be filled otherwise than by an election by the people." 131 Wis. at 506. Thus, the court concluded that county assessment supervisors were not required to be elected under the constitution. The court held that, because assessment supervisors were not "county officers" under the constitution, they could be elected to three-year terms. Thus, the case stands for the proposition that "all other county officers" do not have to be elected.

On the question of which county officers must be elected, the *Samuelson* court was ambiguous. It first held that only those officers who were required to be elected at the time of the adoption of the constitution (*id.* at 509, 510, 512, 513) must continue to be elected. However, this test was muddied when the court implied that those officers who were required to be elected under the statutes passed shortly after the adoption of the constitution also must continue to be elected. *Id.* at 509, 511. This is of some significance, because one such statute[7] required county surveyors to be elected.

In order to resolve the somewhat mixed signals emanating from the case, *Samuelson* must be exam-

This section, which first appears in the original 1848 constitution, has never been amended or repealed. It appears in its original form in the current Wisconsin constitution.

[7]Chapter 10, sec. 127, Rev. Stats. 1849, passed a year after the adoption of the constitution, provided that county surveyors, as well as certain other county office holders, were required to be elected. This, of course, does not have the force of a constitutional provision.

ined to determine the true rationale behind it. Because the case offers two potentially different tests, the rationale underlying these tests must be examined. Fortunately, the basic rationale of the case is unambiguous and, under it, the statute here is plainly constitutional.

The *Samuelson* court, quoting the United States Supreme Court, offered the following analysis:

> "[T]he term 'county officer,' strictly speaking, 'is one by whom the county performs its usual political functions; its functions of government.' One who 'exercises continuously, and as a part of the regular and permanent administration of government, its public powers, trusts, or duties.' *Sheboygan Co. v. Parker,* 3 Wall 93." *Samuelson,* 131 Wis. at 508–09.

Thus, the court indicated that "minor officials" are not usually contemplated when the term "county officers" is used. *Id.* The court held that only "heads of county government"[8] were the ones who were encompassed in the requirement of election. *Id.* at 512.

---

[8]While, as pointed out above, there is dicta by the *Samuelson* court that county surveyors were one of these "principal heads" of county government (*id.* at 510), this statement is not binding on this court. Further, because the court in *Samuelson* was clearly wrong when it implied that the original constitution required election of the county surveyor, we are not constrained by this statement.

Even were the county surveyor a "principal head" of county government, the fact that the office was not included as one of those constitutionally required to be elected supports the position that surveyors have always been treated differently from other "heads" of county government. As the *Samuelson* court itself wrote, the "other" (*i.e.,* not constitutionally required to be elected) "heads" were to be provided for under art. XIII, sec. 9, which

Thus, if we apply the rationale of the case, rather than one of the potentially conflicting statements based on when the requirement for election was promulgated, the issue becomes whether a county surveyor is a "principal head" of county government, who exercises governmental and political powers, or whether the office is a "minor" one. The true teaching of *Samuelson* is that, if a county office falls into the former category, then the office is one which was intended to be covered by the requirement that "all other county officers" be elected, whereas if it falls into the latter category, a "minor" officer, it is not one of the officers intended to be required to be elected. To the contrary, it is an officer which the legislature may direct under art. XIII, sec. 9, to be either elected or appointed.

This analysis of the underlying principles of *Samuelson* and the interpretation we reach finds support in the conceptually similar cases of *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 471, 112 N.W. 475 (1907) (test of applicability of art. VI, sec. 4, and art. XIII, sec. 9, is whether the office is "essential to the existence and efficacy of a county"); and *State ex rel. Bolens v. Frear: The Income Tax Cases,* 148 Wis. 456, 510, 134 N.W. 673, 135 N.W. 164 (1912).

Looking then to *Samuelson's* reasoning, rather than to its formalistic dicta, we analyze the nature of the office of county surveyor. As described in sec. 59.60, Stats.,[9] the office of county surveyor is now a

section allows appointment of officers by the county board. *Id.* at 510.

[9] **59.60 Surveyor; duties. (1)** The county surveyor shall:

(a) Execute, personally or by a deputy, all surveys required by the county or by any court. Surveys for individuals or corporations may be executed at the county surveyor's discretion.

routine one. It cannot be argued that the surveyor is one of the "political" officers of the county. Neither political nor governmental discretion is appropriate to the modern surveyor's role. Further, the county surveyor's role has never in post-frontier times[10] had

 (b) Make, personally or by a deputy, a record in books or on drawings and plats kept therefor of all corners set and the manner of fixing the same and of all bearings and the distances of all courses run, of each survey made personally, by deputies or by other land surveyors and so arrange or index the same as to be easy of reference and file and preserve in the office the original field notes and calculation thereof; and within 60 days after completing any survey, make a true and correct copy of the foregoing record, in record books or on reproducible papers to be furnished by the county and kept in file in the office of the county surveyor to be provided by the county. In a county having a population of 500,000 or more where there is no county surveyor, a copy of the record shall also be filed in the office of the regional planning commission which acts in the capacity of county surveyor for the county.

 (c) Furnish a copy of any record, plat or paper in the office to any person on demand and payment to the county of the legal fees therefor.

 (d) Administer to every survey assistant engaged in any survey, before commencing their duties, an oath or affirmation faithfully and impartially to discharge the duties of survey assistant, and the surveyor and deputies are empowered to administer the same.

 (e) Perform such other duties as are required by law.

[10]When the land was not yet settled, government surveyors had certain quasi-judicial duties, such as settling boundary disputes. *Clark on Surveying,* 5th ed., sec. 2.13, 1987. However, even when matters were in this state of affairs, the original surveyor's judgment was by no means final and was subject to judicial correction. *See e.g. State ex rel. Brayton v. Merriman,* 6 Wis. 17 (*14) (1858) (original surveys made by United States Government not taken as conclusive presumptions of law; they may be rebutted and impeached as to their correctness). Thus, even at the time of their greatest power, government surveyors were only performing a correctable, mechanical function.

any discretionary function attached to it. Thus, a Nebraska court, writing contemporaneously with the *Samuelson* court, stated:

> "He [a county surveyor] has no part in the management of the county or its affairs. He can aid no other officer of the county in the matter of contracts or official services. He is not one of the cogs in the wheel that turns the affairs of the county. He is simply an official designated by law to do a certain class of work for the public. In name he is a county officer, but ... [although] [h]is office brings him within the technical letter of the statute ... his official functions leave him clearly without its spirit and purpose." *Pethoud v. Gage County,* 83 Neb. 497, 500, 120 N.W. 155 (1909).

Some evidence that the county surveyor was not a political or governmental county officer is found in the fact that the county surveyor, unlike most principal heads of county government, was not required to keep offices at the county seat. Ch. 10, sec. 137, Rev. Stat. 1849. *Cf. Samuelson,* 131 Wis. at 509. For these reasons, applying the basic principles of *Samuelson,* the office of county surveyor does not qualify as one which this court in 1907 held to be constitutionally designated as an elective office.

■

Thus, *Samuelson* does not support the plaintiff's contention that the statute is unconstitutional beyond a reasonable doubt. It is persuasive to the contrary. *Samuelson,* after all, is about biennial elections and only incidentally about what positions must be elective. The case rejects the superficial interpretation of art. VI, sec. 4, that "all other county officers ... shall be chosen by the electors" means, without exception, that all "officers" other than certain judicial and

executive officers must be elected. "Officers," in respect to those who must be elected, is treated in *Samuelson* as a word of art embracing only those functionaries of the county whose duties embrace the exercise of governmental power. Using this analysis of the rationale of *Samuelson,* rather than the literal interpretation urged on us by the plaintiff and used by the court of appeals, we conclude that county surveyors are not the type of political or governmental officers required to be elected under the rationale of *Samuelson.*

Turning to the court of appeals' second point, that court held that the office must be one to which one is constitutionally required to be elected, because, in 1965, when the legislature abolished the office in counties over 500,000, it did so based on a constitutional amendment.[11] The court reasoned that this demonstrated the constitutional nature of the office, because, otherwise, a constitutional amendment would not have been required. That analysis is not persuasive.

First, there is no drafting record or history probative of that proposition. The court of appeals' analysis is based on speculation.

Second, an analysis of the 1965 amendment reveals that the amendment also required a referendum on abolishing the office of coroner in counties of over 500,000. The office of coroner is clearly one of the constitutional offices listed in all versions of art. VI,

---

[11]The article was amended by 1963 J.R. 30 and 1965 J.R. 5, with a subsequent vote in April of 1965. Art. VI, sec. 4, as amended in April 1965, provided in part:

"The offices of coroner and surveyor in counties having a population of 500,000 or more are abolished ...."

sec. 4, and therefore a constitutional amendment was required to alter the requirement for election to that office. Thus, the presence of the coroner provision in the amendment explains fully the need for a constitutional change, and the presence of county surveyors on the referendum ballot is only incidental.

Third, art. IV, sec. 23, of the Wisconsin constitution, until amended in April of 1972, provided, "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable ...." It appears, however, that it was the legislative intent originally to abolish by statute only the county surveyor's office in Milwaukee. Accordingly, the legislature could have initiated a constitutional amendment to make the uniformity question an unavailable ground for challenge. In addition, the legislature may have relied upon the dicta of *Samuelson* rather than upon its substance. Even were we to assume that the legislature believed that under *Samuelson* a surveyor must be popularly elected does not make that viewpoint correct. We conclude that the provision of the 1965 amendment, to the extent it could be construed to have anything to do with the election of surveyors, was redundant.

The upshot of this analysis is that there is no way of knowing why the legislature eliminated the office of county surveyor in counties of over 500,000 by use of a constitutional amendment. Therefore, far from supporting beyond a reasonable doubt the idea that county surveyors must be elected, the fact that in 1965 people abolished the office in counties of over 500,000 by constitutional amendment is unpersuasive.

In sum, neither the *Samuelson* case nor the constitutional amendment procedure under which the office of county surveyor was abolished in counties of

over 500,000 is authority to hold that sec. 59.12, Stats., is unconstitutional. Neither source proves beyond a reasonable doubt that the statute is unconstitutional. *Samuelson* can be said to stand for the proposition that only county officers specifically named in the constitution and certain policy-making officers are required to be elected, and the 1965 amendment simply does not permit any conclusions regarding the constitutionality of sec. 59.12, Stats. It is substantially irrelevant. For these reasons, we reverse the court of appeals and remand with directions that the plaintiff's complaint be dismissed. A county may employ a qualified person to perform the statutorily mandated duties as a surveyor. That person need not be elected.

*By the Court.*—Decision reversed and cause remanded to the circuit court with directions.